Good afternoon. Our first case and only case this afternoon is United States v. Sanders. Mr. Cipollone. Good afternoon, your honors. May it please the court, counsel, your honors, with your permission, I'd like to reserve two minutes for rebuttal. Granted. Thank you. Your honors, I'll be brief on the facts because I know the court is pretty familiar with them, but Mr. Sanders was charged with a variety of offenses related to the theft of a motorcycle. During the course of the robbery, there were eyewitnesses who were observing a transaction in which two purported purchasers of the dirt bike motorcycle were engaging in conversation with the purported seller of the motorcycle, and apparently a third individual was alleged to be a lookout a little further down the street. During the course of the transaction, one of the two men sat on top of the dirt bike, engaged in some negotiations with the seller, and ultimately told the second male who was standing nearby to, in fact, using euphemisms, give him the bread or pay him the money, at which time the second male pulled out a gun and an observer across the street who was related to one of the sellers sadly and unfortunately shot someone in the area. The police arrived within approximately 30 seconds and found my client, appellant Mark Sanders, lying on the ground in a pool of blood. The gun was about... This case sort of redefines insult to injury, right? It really does, sadly, and at the time Mr. Sanders was only 19 years old and unfortunately as a result of the shooting is now blind in both eyes and has to live that way for the rest of his life. But the legal issue has to do with this distinction between foreign commerce and interstate commerce, does it not? It does, Your Honor, and that's primarily the issue that I anticipated. And am I correct in reading the record that there was no evidence put on by the prosecution with respect to interstate commerce? You're correct, Your Honor, and in fact the government conceded at page 20 of its brief that it presented no evidence of the interstate connection. But it did put in evidence of foreign commerce, right? It did put in evidence of foreign commerce. There are some disputes, as you know, on the issues relating to the nature and quality of the evidence. But it did present some evidence. But these are a unitary concept, or a unitary concept. Well, I would argue to the court respectfully that it is not a unitary concept. All right, why not? One, the government relies on an analogous statute, section 921, and says that courts... and it's cited those cases in its brief. One of them is a young case from the Fifth Circuit. Is this the one from the Fifth Circuit that relies on the firearm statute? Correct. And section 921 defines interstate or foreign commerce as a unitary concept, as interpreted by the courts, and in the way the language of that particular statute operates. How about that reviser's note? What do we do with that? That seems to say that even though the words used here are a little bit different, we're going to read them as in our statute, that is section 10, that even though the language is not precisely the same as in the kind of language at issue in the young case, that we are nonetheless going to read it as a unitary concept because that's clearly what we think Congress meant. Well, I would submit that that's not what Congress intended because if you look at the language of section 921 on which the young case relied, it specifically states that it is for purposes of, quote, this chapter, which is chapter 44. Section 2119, under which Mr. Sanders was convicted, is a different chapter. Under Title 18, it's chapter 103, and presumably Congress uses the language which it intends when it limited the definition of interstate or foreign commerce as a unitary concept for 921. I think we do operate under that conceit. You're correct. But I do have one other question about that, and that is whether the use of the word including in the statute, which used to be a reliable indication of a non-exclusive list, whether that can fairly be read to expand the definition of foreign commerce to be broad enough to include commerce between states. Again, I would submit respectfully not, Your Honor. If that's the case, it would make the use of the word interstate commerce superfluous. We have to assume that Congress uses words intentionally and that there are distinct and different words used in section 2119. Would it be superfluous even if you viewed it as falling under the category of not all interstate commerce is foreign commerce, but all foreign, or maybe it's the other way around. I think you know what I mean. I don't know that I can attribute being that part, Your Honor, but, yes, I think I do. And I would say I still think it would read out language of a statute as unnecessary in that sense. I think Your Honor is suggesting that all interstate commerce is not necessarily foreign, but all foreign could be construed as interstate commerce. But there can be situations in which there are impacts on foreign commerce that do not impact in any interstate manner. And so to the extent that there are factual situations that can be presented in any case that might, in fact, just have an effect on foreign commerce and not have an effect on interstate commerce. Like any port city. Correct. So it would not be superfluous under that set of circumstances. So if you are correct on this, what's our mode of analysis? How do we proceed at this point? I'm sorry, Your Honor, I didn't mean to. What is the method of our analysis under your point of view then? What's the next step? I think you have to look at the evidence that was presented by the government from the perspective of the indictment, of course, only alleges an impact on the interstate commerce element. And I'd respectfully submit that this clearly was a constructive amendment in three different ways as a result of the way the presentation occurred at trial. Before you explain those ways, can you tell us where in the record you raised the argument that it was a constructive amendment? I believe I can, Your Honor. May I describe my reading glasses? You can borrow mine. Thank you. I like the color, Your Honor. You can't borrow mine because they're in my eyes. I submit, Your Honor, it appears that page 303 of the appendix, but it's in the transcript. I state it to the court, Your Honor. Your Honor, the second request would be that I would move to strike the entire testimony of Mr. Sutch, who was the government's evidence expert, I'm sorry, on interstate commerce. And then I further down at line 16 say, if you look at the indictment, the indictment charges only that the dirt bike traveled in interstate commerce. Two lines down from that, it does not allege in the indictment that it traveled in foreign commerce. And for that reason, I will move to strike the entire testimony of Agent Sutch, and I also will incorporate that in my Rule 29 argument. All right, so you raised it there, but isn't the purpose of constructive amendment to have the defendant be on notice of what's going to be proved at trial? In terms of the elements of the offense, it's really, I submit, a fatal, that's a variance, I would say, Your Honor. And I would say this is different than a variance. This is something that is alleged in the indictment. It's elemental. But you were on notice that they were going to try to prove foreign commerce. They asked you for a stipulation on that. They did ask me for a stipulation. You didn't have to agree to it, but surely, even before the trial began, you were on notice that the government intended to prove that this bike traveled in foreign commerce. Not only from that, but from the albeit. And the evidence at trial showed that it traveled in foreign commerce. What's odd here, as far as speaking only for myself, is that the jury instructions proffered gave the jury the opportunity to find either interstate commerce or foreign commerce, and you got the foreign commerce part struck out of that at your request. And now you're coming to the court, as I understand your argument, saying that foreign commerce should not have been stricken from the jury instructions. I don't suggest that, Your Honor, because I don't think foreign commerce should have been allowed in the jury instructions or in the testimony or the presentation of evidence. Why? Just because it wasn't in the indictment? Because it wasn't in the indictment. So this entire case turns on the fact that foreign commerce was not mentioned in the indictment, and because it wasn't, there was a constructive amendment to the indictment. I would submit, yes, in a nutshell, that's the appellant's case, Your Honor. And from the perspective of speaking as the trial went on par, an appellant's counsel at trial should not be faulted for holding the government to the four corners of the indictment that the grand jury returned. I think the objection to the use of the word foreign commerce in the jury instructions was in fact consistent with the appellant's position, and the government chose to present its evidence how it chose to present it, and it's not incumbent on the defense counsel. So just to close the loop on this, this is not a case about failure of proof. Well, I submitted my sufficiency. They proved the element of foreign commerce. You're saying they shouldn't have been entitled to prove the element of foreign commerce because the indictment didn't so charge. I'm actually saying both things. I'm saying, first, they shouldn't have been entitled to prove it, and, two, in my sufficiency of the evidence argument, which I'll rely on the brief primarily as the court has questions, I've argued that they didn't prove it because of the lack of specificity in the testimony of either of the two witnesses. Do you have a separate sufficiency argument, though, that rests on the absence of any evidence whatsoever of interstate commerce, which is what was alleged and what the instructions told the jury it had to find for the jurisdictional element? I would say I do in this sense, Your Honor. The government was never able to prove that this dirt bike was in fact a Suzuki. It's a sufficiency argument, but if we accept the premise for argument's sake for now that the evidence of this being a Suzuki dirt bike in and of itself was deficient, then any of the expert testimony would not be salient. Deficient in what sense? Deficient as proof of interstate commerce, or deficient as proof that Suzuki bikes all originate in Japan? Well, I guess if this was not a Suzuki bike, then the testimony by Mr. Such, the government's expert, and by Officer McAllister, which I've objected to on different grounds, would not establish that this bike had moved in foreign commerce or affected foreign commerce. But even if it had been proven as a Suzuki bike, and even if it had been proven that Suzuki bikes originate in Japan, where is the proof that there was movement in interstate commerce as opposed to foreign commerce if we accept the distinction? There is no proof, and again, the government conceded that. Isn't that a sufficiency of the evidence argument? I would submit it is, Your Honor, yes. Did you preserve that argument? I preserved a Rule 29 motion on the sufficiency of all the evidence, so I would submit in the broad sense, yes, I did. And in the context of arguing that the government never argued interstate commerce or the effect on it, and they only argued foreign. So, again, from a trial strategy perspective, I don't want to highlight deficiencies in the government's case before they might not have an opportunity to cure it. But I don't recall you arguing in closing to the jury, look, they may claim this thing was made in Japan, but that's irrelevant here. All that matters is interstate commerce. The judge instructed you. I think the instructions came before closing. They did. Well, I don't remember you saying, you just heard the judge's instructions, and the judge said this had to travel in interstate commerce. And ladies and gentlemen of the jury, Japan is not a state of the United States, and if this did travel in foreign commerce, I'm not accepting that it did, but if it did, it's immaterial and irrelevant, and my client should be acquitted. There was none of that argument to my recollection, was there? To my recollection, no, Your Honor. So is this all sandbagging? No, it's a valid legal argument, and constructive amendment is, in fact, a legal argument. It was preserved. That's a valid argument, but sufficiency. I mean, I don't know. I'm having trouble seeing. I understand how you're making a constructive amendment argument. I'm having a lot of trouble seeing how you're making a sufficiency argument when you didn't remotely pursue the type of argumentation that I just hypothesized. I understand, Your Honor. I guess I would suggest that to the extent that the jury was given the option of interstate or foreign, we don't know on which of those two potential bases the jury relied. That wouldn't have solved your problem. That would not have solved my problem because there was an alternative. You can find interstate or foreign commerce. Right. We don't know if six jurors thought it was an effect on interstate commerce and six jurors thought it had an impact on foreign commerce, and there's obviously no special interrogatory in that respect or special verdict request in that sense, so we do not know. So unless we find, according to your construct, unless we find that this is a unitary concept and that the terms are interchangeable, you would prevail at least on a preserved error standard. What would the result be on a plain error standard? I think the same thing, Your Honor, because it's a very clear-cut constructive amendment of the indictment. It's not, I don't want to use this term too loosely, rocket science in the sense of the indictment alleges only interstate. If the government provides alternative options for the jury on which to base its verdict, under Sterone and the other cases that are cited in my brief, that's a Fifth Amendment constructive amendment of the violation, a constructive amendment of the indictment that is so elemental and fundamental that even on a plain error standard, the appellant should prevail. Thank you, Your Honor. Thank you, Mr. Sikora. We'll hear you on rebuttal. Mr. Bowden. Thank you, Your Honors. May it please the Court, my name is Eric Bowden, and I represent the government of the United States in this matter. I think what the government's brief has established is that the issue is, whether it was a constructive amendment or not, putting aside for a moment the issue of the standard of review here, it's a very simple principle that the government has cited in its brief and will argue today, and that is if something, no matter where it was manufactured, came into a state, it had to have come into that state from a place outside of that state. Whether it was Japan or whether it was New York, it came from a place outside of Pennsylvania into Pennsylvania on the date of the offense. Are you saying you proved interstate commerce? I think we did, Your Honor. Where? I didn't see that anywhere in the record. I saw Japan. I saw foreign commerce, but I didn't see interstate in the record. You saw Japan and Pennsylvania. Right. Yes. Yes, Your Honor. I think under the principle that interstate commerce and foreign commerce are a unitary concept and that they are synonymous terms for the purpose of the jurisdictional element in statute, the government Does unitary mean they're synonymous? I didn't understand that to be the law. I thought the law of this unitary concept was that as long as you prove one or the other, you have proved an essential element of the case. It doesn't mean they're the same thing, does it? Well, I think that there's maybe a distinction here from the government's perspective without too much of a difference that if you're proving that something moved from outside of Pennsylvania into Pennsylvania, whether it was foreign or whether it was interstate, you have satisfied the jurisdictional essential element of the carjacking statute. So there is a difference, something moving directly from Japan through a port in Philadelphia into northern Philadelphia where the event takes place. That's foreign commerce. That's foreign commerce. And you didn't indict that? We did not explicitly. Why not? It seems like a mistake was made, was it not? Frankly, Your Honor, I'm not in a position to tell you why that decision was made. I was not involved in that decision at the time the case was indicted. But frankly, Your Honor, whether it was a mistake or not, whether the government had indicted on foreign commerce, interstate commerce, or adopted the exact language of the statute, it would really have no material impact based on the precedent that's been established in many circuit courts looking at the same exact languages. Is it the same exact language? And that was the question that was raised in the opposing counsel's arguments, that there are, in fact, differences in the language of the statutory, of the statute at issue in the Young case, for example, and the way that provision defines for the purpose of firearms offenses, interstate or foreign commerce within one set of quotation marks, defining it in the singular as a term or the term as opposed to the statute we have, which separately in separate paragraphs, indeed, sets out definitions for interstate commerce and foreign commerce. They're two separate terms. They each have their own separate set of quotation marks. Well, Your Honor, if I may just – And I know punctuation is a frustrating basis on which to rest the outcome of a criminal case like this, but, you know, each shoots and leaves. The punctuation was chosen impossibly for a reason, Your Honor. But if I may just quote from 18 U.S.C. 2119A, the carjacking statute, whoever with intent to cause death or serious bodily injury, harm, bodily harm, takes a murder vehicle that has been transported, shipped, or received in interstate or foreign commerce. Section 921 in the gun statute states the term interstate. What about the definitional sections? The definitional section for 922G states the term interstate or foreign commerce includes commerce between any place in a state and any place outside of the state. So putting aside for a moment the punctuation, the actual syntax is exactly the same in the two statutes. And I think it's important to look at the time period when Congress passed these statutes. The carjacking statute is a relatively newer statute. It was passed in 1992. The firearm statute was passed in 1968. Congress decided it was important enough to add a definitional section for that statute. It didn't add a definitional section for the carjacking statute. I think it's fair to assume that Congress knew a lot of people would be sort of looking back to the firearm statute for the same exact language to inform as to how governments would indict the case. Does that necessarily follow, though? I'm sorry, Your Honor? I say isn't that a pretty broad leap that you're making? Does it necessarily follow that Congress was thinking along those lines? I don't want to presume to think along Congress's lines, Your Honor, but I think it is compelling to see that no definitional section is attended to the carjacking statute, and a definitional section does attend the firearm statute, and the same exact language is used twice. I mean, it's really a trap for the unwary if we are to look at the carjacking statute and think that it has a materially different definition than the same language used in a prior-in-time firearm statute. So in your view, these kinds of cases should always be, the indictment should always read interstate or foreign commerce, or not necessarily? Well, Your Honor, I think in my view the position of the government is that it is immaterial in this case whether the government explicitly put foreign commerce in the indictment or as they did put interstate commerce because it's a unitary term, and as long as something that government proved beyond a reasonable doubt at trial that something moved from outside of Pennsylvania into Pennsylvania, whether it came by way of Japan or Ohio, something moved in interstate or foreign commerce and established a jurisdictional nexus. You're saying it's immaterial as a general matter or just in this case? I think in this case, Your Honor, I can't speak to it. Because as a general matter, the indictment should always track the language of the statute, should it not? I can't disagree with that, Your Honor, but we've seen cases where statutes have, and cases cited in the appellant and appellee's brief where cases address actual alternative bases of jurisdiction where there are jurisdictional elements that are distinct. One that comes to mind is the McCrary case that was cited by both parties in this case, and that involved a kidnapping that occurred on the high seas, and the government in that case in the indictment charged foreign commerce. But that was an alternative basis of jurisdiction in the statute where it could be charged under foreign commerce or special territorial jurisdiction. And there the court found, the Fifth Circuit found, that there was a constructive amendment because the defendant hadn't been properly put on notice. Why? Well, that's what's strange about this case. Here, you did put the defendant on notice that you intended to prove that the bike was manufactured in Japan and sent to Pennsylvania, right? Correct, Your Honor. The first time in February, months before the trial, when we sought a stipulation, and then more immediately before the trial when the expert notice was provided. All right, so it appears you put them on notice, and there is evidence of record that you told the jury that it traveled in foreign commerce. But I'm not sure that gets you over the hump, because on the bookends of the trial, the charging document doesn't say foreign commerce, and the jury instructions don't say foreign commerce. Correct, Your Honor. I mean, I didn't practice much criminal law, but I've been a judge for 13 years. I've never seen a case where that happened. I mean, it's strange, isn't it? And why shouldn't we take those facts? Interstate commerce at the beginning of trial, interstate commerce and jury instructions, nothing about foreign commerce, proof of foreign commerce. Why don't we establish some rule of law that says that that's an amendment, that's a constructive amendment, that Sanders is entitled to a new trial? Well, I think for a couple of reasons. Number one, Your Honor, it's not controlling precedent, but persuasive authority from another circuit is found, albeit in a different statute, that the same exact difference in that Young case, interstate commerce was charged, foreign commerce was proved, conviction resulted, and the defendant appealed stating that he hadn't been on notice of foreign commerce, and in that case the gun was manufactured in France and it ended up in Texas. So it's really an analogous situation. I would think that that would be persuasive authority for the proposition that just because a mistake may or may not have been made in the indictment, it really comes to what the prejudice was to the defendant. And the jury instructions. Well, I mean, why would the government have just conceded that point and allowed foreign commerce to be taken out of the jury instructions after just sitting through a relatively brief trial where the government proved foreign commerce? I think because the government's philosophy was that these were unitary concepts and to have the pleadings, the indictment in the case match the jury instructions, we made the decision not to have a difference in the jury instructions. Well, that sort of gets back to my overarching concern, which is we've got an indictment that doesn't match the proof at trial. Right. So it seems like the inverse of how criminal trials are supposed to happen. Well, I think I would respectfully contend with that, Your Honor, only because I think it all falls back onto the unitary concept that it doesn't really matter, and I don't mean to be glib, but it doesn't matter which word is invoked in the charging document, whether it's interstate or foreign or both. As long as they mean the same thing? I'm sorry, Your Honor? As long as they mean the same thing? Well, as long as you establish at trial through proof, which the government did in this case, I submit, that something moved from outside of Pennsylvania into Pennsylvania. Which makes the two terms mean the same thing. That's the government's position in this case, Your Honor. If you are wrong about that, and if at trial, the trial judge had charged interstate or foreign commerce, giving the alternative grounds, there wouldn't be a proof problem, but we'd have the same argument that the court confronted in Sterone. How do we know which prong the proof went to? And again, you would have to respond, it doesn't matter, because this is a unitary concept which makes the two concepts fungible, essentially. With one exception to that, Your Honor, I think the commerce element in Sterone really was an alternative basis. It was different in that case. I mean, you had a wholly different theory of the case. In one case, arguing that the movement of sand versus downstream movement of steel. I think that's different than what we have here. I understand that there were two different variables. That is, both it was sand versus, I guess, concrete, and importation versus exportation. Yes, Your Honor. So I understand that that's a complicating factor that's not present here. But the bottom line is still the same. You would still have a defendant arguably left to guess. Well, did the jury decide I was guilty of having stolen this bike that was a bike that had moved in interstate commerce or a bike that had moved in foreign commerce? Well, I think the fact that the jury convicted in the manner that it did shows, I mean, I think that we can fairly infer that the jury saw interstate and foreign commerce fungible as well. The jury saw a car jacket. And, yes, I agree that under the same approach that says that Congress always means maybe something a little bit more generously read than what they perhaps precisely wrote, maybe for juries we can say that, yes, we think that the jury fully appreciated what the court was trying to say, even though the court said something perhaps more expansively. Well, I think very clearly the government explained to the jury what the elements of carjacking were and that the jury found the interstate element as charged by the court after hearing only evidence of foreign. And they had an opportunity to ask a question. The judge even referenced that during the jury charge. Well, maybe they found foreign commerce. Isn't that what the government's trial lawyer argued? Your Honor, yes. But that, based on the argument or questions from the panel, that wasn't what was indicted and that wasn't what was charged to the jury. So if the jury found foreign commerce and not interstate, which was presented to them in the charge. Then the case has to go back. Again, Your Honor, I would fall back on the position that it's a unitary concept, that the terms that were used in the charging document, whether it's foreign or interstate, they have the same meaning for this case and other persuasive authority in this country have found the same and that it wouldn't mandate that the case go back to trial or back a tour of any of the convictions. Are you standing on the absence of preserved error and therefore plain error applies argument? And I think that's an important factor, too, that we haven't discussed, that if you look at the transcript, not only have 50 seconds here, Your Honor, but the issue was not properly preserved on appeal. There was no mention of constructive amendment. You can at best say that counsel may have danced around the issue, that he identified the fact that there was something mentioned in the indictment and something different was proved interstate in the indictment, foreign commerce proved at trial. But constructive amendment was never discussed. It never put the district court on notice as to what the error or the possible error was. So I think we are on a plain error review here. And in plain error review, there's a presumption of prejudice, but the government can rebut that presumption, and I think the government has overcome that presumption. I mean, let's look at this for a moment, Your Honors. I mean, what was the prejudice that the defendant suffered if, in fact, the court finds that there was a constructive amendment that was not preserved on appeal? Well, the defendant clearly had notice of this. This has already been discussed, that the government indicated its intention to gain a stipulation. Well, foreign commerce. Well, to gain a stipulation for foreign commerce, which again under the unitary concept is the same as interstate for this purpose. And there's no realistic possibility of double jeopardy here. But your very argument on even under plain error or under determining the standard of error, again, rests on finding this unitary concept. I think so, Your Honor. I think that would be the government's position. Thank you, Mr. Bowden. Roboto, Mr. Ciparone? Your Honors, I'll be briefing in two minutes. I have to be. In terms of preservation of the argument, not to be redundant, but without using the words constructive amendment, trial counsel said, look, there's one element charged in the indictment, another element, different element that was proven. That is the constructive amendment argument. Trial counsel, I don't want to be coy, me, didn't use those words. But nonetheless. You have used those words in other cases. I've used those words in other cases. I just, in the heat of the moment at that point, probably didn't use those specific words. But I preserved the argument. I put the court on notice of what the argument was. Rather than just use the words constructive amendment, it would be far more of a substance to not. I told the court exactly what the issue was.  You certainly raised an issue. You flagged an issue. But why should we not interpret that issue to be a failure of proof as opposed to a constructive amendment? Because I did incorporate it by reference in my Rule 29 legal argument for a directed verdict as well. So I would submit that that is putting the court on notice. I was arguing both the legal and the factual sufficiency from that perspective. Just two other points. Your Honor's reference to the trap for the unwary. What I think the trap for the unwary here is assuming, as the government did, that another section in a different chapter, which has a definition, applies to a completely unrelated chapter in which Congress chose not to cross-reference the definition. And that statute had existed, as counsel said, since 1968. They could have easily cross-referenced it if they wanted to. So I think the trap for the unwary is making an assumption that a definition in one chapter in a different section, in a different statute, applies to the carjacking statute. I think that's the trap for the unwary. With respect to being on notice of the intent to prove respectively to the government, the only thing that the defendant has to rely on for notice of intent to prove something are the elements of the offense as alleged in the indictment constructed by the grand jury. The government can't just change what the grand jury under the Fifth Amendment did constitutionally by suggesting we're going to prove something different. Since you have notice of it, we get the right to change what the grand jury did and to change the charge that the defendant is facing in terms of the elements. So I don't think that the government's notice, whether it's by way of a proposed stipulation or by notice of an expert witness report or summary of what an expert witness will say, cures the problem that the grand jury's role can't be usurped by the government and the indictment can't be changed by the government. And just to be clear, on the motion for directed verdict, I just don't remember exactly what the substance of that was, but did you say something to the effect that, Your Honor, this indictment charges interstate commerce. There was not one iota of proof put on by the government of interstate commerce. I don't recall using those words or exactly those words. If I can just grab the appendix, Your Honor, I have it flagged, I believe. And, again, what I believe I said in terms of that issue was that the, I'm paraphrasing here, but Mr. Such's testimony was limited to foreign commerce and the indictment alleged interstate commerce only and does not reference foreign commerce. So that pretty expressly put the court on notice that the evidence was directly different than, materially different than what was alleged in the indictment, at least from the defense's position. And then is it your understanding, then, that what really happened here was a case that started as an interstate commerce case and was tried as a foreign commerce case and concluded as an interstate commerce case? That's pragmatically the way it shook out. And I know the court, in a nefarious sense, used the word sandbagging, but it's really strategy from the defense perspective. The government's got the burden of proof and the government put forth the indictment, so they chose how to present their case. And if their proof constructively amended the indictment, that's not the fault of the defendant and he wasn't on notice, pragmatically he was. But the only notice that's important is that which is constitutionally provided by virtue of the indictment. But does that issue of notice then come down to, as Judge Rosenthal's question seemed to probe, our decision on the entire unitary concept? Because I think, clearly, if instead of using the words foreign commerce and interstate commerce, we use the words intentional and reckless, it's a non-starter, you win. They can't charge the case as intentional. They can't try to put on evidence of intent and then stand up in front of the jury in closing or in the jury instructions and say, well, you know, it was reckless. You'd be jumping up and down on that, right? So here, is our decision going to come down to whether foreign and interstate commerce truly is interchangeable, i.e., a unitary concept? I do think so, Your Honor. I certainly would say that my position is weakened if it's a unitary concept as opposed to a non-unitary concept. All right, but why isn't it fatal if it's a unitary concept? I was trying to be coy there, so it might be fatal, but I don't like to see that, Your Honor. I understand. Mr. Sanders. The court appreciates your candor, Mr. Cerullo. Anyone else?  All right, thank you. Thank you, Your Honor. Thank you very much. The court appreciates the excellent argument and briefing. We'll take the matter under advisement. At your own.